Good morning. May it please the court, Lauren Whitley with the Federal Public Defender on behalf of Markel Smith. Markel Smith received a four-level guideline enhancement for possessing a firearm with a scratched off or modified serial number when the firearm he pled guilty and was sentenced for possessing had a clearly legible, visible firearm, sorry, serial number that led to a traceable firearm. Mr. Smith pled guilty and was sentenced for possessing a machine gun in violation of 18 U.S.C. 922-0. The gun in question had three serial numbers. Two of the serial numbers were modified, one on the chamber of the gun and one underneath the muzzle on the frame of the gun. The third number, however, on the barrel of the firearm was completely visible, completely legible, unmodified, and was used to successfully trace the firearm in question. The guideline at issue, particularly for, of course, Mr. Smith's second issue before this court, is U.S. Sentencing Guideline 2K2.1B4Bi, which states that someone receives... Judge Goldberg Are you still presenting a Second Amendment argument on 922-0? Markel Smith I am, Your Honor. I would, I'm happy to answer questions on that issue. I know that there is a per curiam opinion under Taylor from this court that has denied that issue, ruling essentially that machine guns are not weapons considered in common use and therefore not within the gambit of the Second Amendment protection, but we are still presenting that argument. I was jumping ahead to the second issue, but I'm happy to answer any questions the court has. Judge Goldberg I was just going to note in our Bianchi decision, which had some degree of disagreement, it appears to me that all 15 judges agreed that machine gun regulation was permissible.  Judge Goldberg Okay. Markel Smith Yes. I mean, I would note, Your Honor, to the extent that the court is looking at the facts of this particular case, Mr. Smith here possessed a machine gun conversion device that was attached to a handgun, and I do think that's slightly different when considering the self-defense perspective that certainly the United States Supreme Court is putting forward under Bruin and those concurrences and dissents in Rahimi. We have a handgun that is a fundamental firearm for self-defense, and so I do think that this presents a slightly different position than perhaps, I believe, the assault rifles in Bianchi or in Price dealing with a scratched off serial number, as well as in, I believe, Miller, the U.S. Supreme Court case that speaks about a shortened short barrel rifle. So we would argue that this is a different situation, and just kind of wrapping up that point, you know, the machine guns are also now at this point, I think, I quoted some statistics in our brief in the district court as well we did here before this court. There's almost three-quarter million machine guns now in circulation. Legally, I think the district court actually clarified that in its denial of the motion to dismiss, stating that there are almost a quarter or over a quarter million that are in private possession, we argue is erroneous, and that the Second Amendment does protect the right to possess such a firearm, and then, of course, then the burden shifts to the government to establish the history and characteristics are consistent with that type of regulation. So we stand by the briefing arguments. I'm happy to answer any other questions on that particular issue, but I was kind of moving forward to the second one. So again, the guideline for that second issue presented here that we're speaking to states that someone does receive this four-level enhancement for any firearm had a serial number that was modified such that the original information is rendered illegible or unrecognizable to the unaided eye. And the goal that's stated in commentary to this guideline, and certainly in the case law interpreting it, is to render punishment and deterrence for the untraceable firearm, the trade, the sale, and the possession of the untraceable firearm. And it's really the guideline language here, the second phrase, which the district court here in denying the subjection focused really on that first phrase, but the second phrase is at the heart of the guideline and what it aims to punish additionally by this enhancement, such that the original information is rendered illegible or unrecognizable. Here, Mr. Smith possessed a firearm that had a clear, unaltered, unmodified serial number on the barrel of the gun. It wasn't scratched in any way. The court certainly has documentation in the record about what the serial number looked at. It didn't require any additional forensics or microscopes or acid to view the number in question. And of course, while not necessarily indicative of the application of the guideline, the gun was traceable and it was traced by the ATF agent. I would compare it kind of similar to having a book where you have the title of the book in a number of places, on the spine, on the cover, on the inside page. Certainly we've all had books where the spine is cracked and broken and you can't read the title. Maybe the inside page is ripped out, but you still have the title of that book on the cover or inside the book itself in other places. You know what the book is. You are able to identify it. And that's what we have here with Mr. Smith's firearm. In particular, I think that... Let me ask you this real quick. So you, the web, I understand the law and regulations to say that the serial number is to be printed on the frame or on the receiver, and here it's printed on the cerebral part of the gun. Does that change your argument regarding the enhancement? I would say no, Your Honor. I would just highlight that this particular firearm had what appeared to be three serial numbers on it. One was on a plate. It appears these glocks have a plate underneath, on the frame of the gun, underneath where the muzzle is. That was scratched off or modified. There was a serial number that was on the chamber or the slide of the gun. Obviously not the frame identifiable part. That was scratched off or modified. And then the one that was unmodified in any way was also on the slide of the gun underneath of it. But Your Honor's question, we would argue, it doesn't change our position as long as there is a serial number such as here that is usable, legible, visible, and traceable that the guideline enhancement should not apply. And I would certainly note that the regulations I think Your Honor is referencing minimally requires one serial number on the frame of the gun. And so certainly we have a gun here that has more. And there could be a situation where a firearm might, the manufacturer for whatever reason, could put ten numbers on the gun, ten serial numbers, and nine of them are legible and one of them is scratched off or modified. And certainly our position would be the guideline should not apply there either. So just kind of as a hypothetical example. One of the arguments too that was raised both in the district court and here are the changes that were made to this particular guideline in November of 2024. The commission imposed changes primarily to resolve a circuit split about how legible or... Is part of your argument that the guideline is unenforceable because if there are multiple serial numbers, all the same, and one or two out of three or however many there would be are legible, that there is no authority to adopt that regulation? I'm sorry, Your Honor, but I could just ask a clarifying question. Authority for the Congress to adopt a regulation imposing... I'm not sure I understand the question. Or here it's a guideline, isn't it? Yes. That's what I'm asking. Is part of your argument that there's no authority to adopt this guideline where there are, of multiple serial numbers, at least one that is fully legible? No. I mean, I think the Sentencing Commission and Congress certainly has the authority to adopt a guideline that makes clear if they intended, and the language would be right now it says any firearm had a serial number, certainly they could have said any firearm had any serial number, which would make it extremely clear that Mr. Smith's position would be much more difficult. Because then they're saying if there's any serial number, even if others are legible, that has been modified, this enhancement applies. The bottom line of your argument would be that the guideline is legally adopted. It's just a question of what it means because of the change in the language? Yes. Yes. And how it applies to this particular factual scenario, Your Honor. And of course our position is that here, looking at the language of the guideline and what was presented, this enhancement did not apply. So yes, sir. I think the other thing I would just highlight, too, is that we're talking about, of course, a situation with a guideline that has no mens rea. There's no knowing element here. It's a guideline enhancement, which has a lower standard of proof. There is a criminal offense for possessing a firearm without a serial number. There's a criminal offense for possessing a firearm that has a modified serial number. That requires those additional levels of proof and constitutional protections that weren't afforded here. So certainly, even more particularly in this situation, when you have someone accused and pled guilty of a crime and you're looking at a strict liability guideline, then the language matters of the guideline and how it's applied certainly matters. And in this particular situation, because Mr. Smith had a clearly legible and traceable serial number on this gun, it was error to apply this guideline. So for that particular issue, we are asking the court to reverse the sentencing, remand for a new sentencing with corrected guidelines, and we stand by our remaining argument for the first issue on the Bruin. Motion to dismiss. I would like to reserve my remaining time for rebuttal, if I may. Thank you. Thank you. Mr. Sawyers. Good morning, your honors, and may it please the court. Reed Sawyers for the United States. To start with the Second Amendment 922.0 issue, as Judge Agee recognized, every judge on this court agrees at the least that the dangerous and unusual weapons tradition at Step 2 justifies a machine gun ban. So I think the most straightforward and most robust manner for this court to resolve this issue is to say whether addressed at Step 1 as a manner of common use or whether addressed at Step 2 as a matter of dangerous and unusual weapons, machine guns are dangerous and unusual weapons not commonly owned by the public for lawful purposes, and therefore Section 922.0 is constitutional across the board. I'm happy to address any questions the court has on the Second Amendment issue, and if not, I'll turn to the Guidelines Enhancement issue. The text of the Guidelines Enhancement is unambiguous, but even if it weren't, all the other considerations this court looks to, precedent, purpose, and policy, point in the same direction. The district court here correctly determined that so long as one serial number is not legible to the naked eye, the enhancement applies. Start with text that you would agree the district court, and I think the attorneys below and the government, there is a significant amount of argument over if it's a or any. Wouldn't that lead to it being a suggestion, or I guess maybe that there is some, that it is ambiguous? So I think you're getting at the rule of lenity, Your Honor. As my friends conceded at J275, the rule of lenity only applies when a provision is grievously ambiguous, and as the Chapman case they cited makes clear, it only applies when the provision is grievously ambiguous after you exhaust all the tools of statutory construction. Well, when you consider the purpose of it, and ambiguity, maybe it is grievous. The whole idea is that we don't want people having weapons that are not traceable. Here, if you have three and two are obliterated or somehow changed, but one is clear, then that would, interpreting the way you would, would undermine the purpose because it's traceable. Your Honor, one purpose of the enhancement is punishing the possession of completely untraceable firearms, but as the St. Hillier case from the Second Circuit makes clear, the enhancement also aims to punish the possession of weapons that are more difficult to trace, and as this Court recognized in... Well, why do you all say, because I saw that argument in there that you, where you said that it's less, one alteration makes a weapon less traceable. How is it less traceable here if it's the same number, just because of the one alteration? So at J311 to 312, the record is clear that firearms parts on Glocks are severable. You can take the slide, you can take the barrel, and you can take the frame apart, and I think St. Hillier is clear that, and I'm going to read you the exact quote, a gun with an indecipherable serial number on a single interchangeable part is just a swap or two away from being untraceable, and thus, the enhancements policy extends to firearms that are more difficult. Well, here, it isn't a question over one particular part. There's a guns intact. So, if two of the three serial numbers were fully intact, would that make any difference to your argument? No, Your Honor. Our primary position, which is the position that has been adopted by all the courts of appeals addressing the pre-2024 guideline, is that, so two of them only addressed whether the serial number had been obliterated on the frame. Here, it's obliterated on the frame, which is the part required by regulation to have the serial number. The rest said that the obliteration of a single serial number, no matter where it is, suffices, and I think it's really important to look at Sam's, the Sixth Circuit decision, and St. Hillier, the Second Circuit decision, because we don't need to guess at the Sentencing Commission's purpose here, because in the text of Amendment 828 itself, they spelled out their purpose. But the Sentencing Commission has told us in 2000, as far back as 2006, that their concern is traceability, that the purpose is traceability. I mean, that's the purpose of the enhancement, is traceability. And as the St. Hillier case notes, it's not complete untraceability that's at issue, and that's only confirmed by the recent amendment twice over, because the recent amendment does not require that the firearm be untraceable through scientific means, only that the serial number not be visible to the naked eye. And I think it's really important. But here it is. It is very visible. But to quickly return to the St. Hillier point, in both Sam's and St. Hillier, the Sixth and Second Circuits, where the Sentencing Commission drew this standard from, both of those cases made clear expressly that the enhancement applies if one serial number is illegible. And that's so because it serves the severability purpose, and the Sentencing Commission, in the text of Amendment 828 itself, expressly said it was adopting the Sam standard, which it called out by name, that case, and the St. Hillier standard, which it called out by name. So it is inconceivable that the Sentencing Commission, in expressly adopting the Sam and St. Hillier standard, as to the degree of legibility of the serial number, meant to sub salientio overrule the other half of those. Let's assume two of the serial numbers are fully legible, and the first letter or number on the third iteration of the same serial number, that that's marked out. But the rest of the serial number is still there. What happens there? So we would say that the third serial number, and I just want to make sure I have the hypo correct, so if I say anything that suggests I'm not understanding, please correct me. But there, the third serial number would not be legible to the naked eye, because you can only see one of the letters. And it's true that in some sense you might be able to guess or infer that it's the same serial number, but you have a lot of uncertainty there. And therefore, because the third serial number is not legible to the naked eye, and it is a serial number, then the enhancement would apply based on its plain text. So what's the logic in that situation? I mean, clearly you've got the same number in two other places, and the third number has everything that's the same except for the first letter. I mean, there's no doubt that you can trace the firearm the same way as if there were three fully legible numbers. The primary logic is the severability logic discussed in St. Hillyer, but it's also true that this court in Harris made clear that there are purposes to the enhancement even beyond traceability. There are other law enforcement benefits. And to use an example from a recent district court case I've worked on, the agent there was able to confirm based on pictures on the defendant's phone that he previously possessed the same firearm, because he saw pictures of the defendant holding up that firearm. And in those pictures, one of the firearm serial numbers was visible. If that one serial number had been altered or obliterated, the agent would not be able to perform that comparison. But, I mean, I think Ms. Whitley made a good point. I mean, we've been, we were told in the commentary that state of mind, I mean, it seems like you're getting into state of mind issues, and obviously there's criminal statutes where you can charge if there is a way to show that somebody obliterated, or if that's what you're trying to do is punishing the defendant for being the one that obliterated the serial number. But here, I think the Sentencing Commission has been very clear that it's traceability. Respectfully, Your Honor, all of the cases to address this issue, including the St. Hillyer case on which the Sentencing Commission based the 2024 update, made clear it's not complete untraceability. And I think that's the critical aspect. But you would agree that the sentence, in the commentary, it also says that for purposes of the enhancement, the commission is saying we are not looking at state of mind. I think what you're getting at is whether there's a mens rea requirement to apply the enhancement. And as my friend agrees, the enhancement does not require a knowing mens rea, whereas 922K does. Is that what you're getting at, Your Honor? Yes. But I don't think that's relevant to whether, to the issue that St. Hillyer and Sands expressly addressed, which is how many of the serial numbers need to be altered or obliterated. And because the policy behind the enhancement is assisting law enforcement and preventing firearms that are more difficult to trace, the policy behind the enhancement does apply. But again- Let me ask you this question. There's a different hyperparameter. What if there are two serial numbers, both of which are on the non-severable part, and one is obliterated? What would be the situation there? So just to ensure I have the hypothetical right, if there were two separate serial numbers on the frame of the firearm- That's right. And one was obliterated, but one was just pristine. You can read it clearly. So first I would say I'm not aware of that circumstance ever arising. So that's why it's a hypothetical. Yes. I think our primary position would be that because a serial number has been altered such that it's no longer legible, and that is the plain and unambiguous text of the guideline, because a serial number is no longer legible, that it would apply. But you have to be very careful now. The Second Amendment still applies. You may be okay with that. I'm not saying one or the other. But the whole idea, though, is that you're limiting people's right to have weapons right in their home. So you purchase the gun. You know there's a law that says you can't have a gun that's not traceable or doesn't have a serial number on it, but you buy it and say, well, one is gone, but one right here is clear. This ought to be okay, because it's traceable and it sees the law. Isn't that impinging upon someone of the Second Amendment right there in terms of, because it's not just, we'll look at this just for the person who's a criminal. We're talking about people who otherwise you go in their home for another reason, like just to check on their stove or whatever, and say, oh, look at this weapon here. Oh, you only have this. Yeah, I got it, but it's clear here that you can read what it says. Don't we have a little problem there if we go as broad as you want us to go? So I think there might be different Second Amendment concerns at play with the statute 922K itself, but this court made clear in Simmons, and this is an analogy, but let me quickly explain it. There the defendant possessed an NFA firearm, a National Firearms Act firearm, like a machine gun, and this court said that because the defendant there agreed that nobody could possess a National Firearms Act firearm, he couldn't challenge on Second Amendment grounds the sentencing enhancement applicable for him being an unlawful user of controlled substances. So I think here, because the defendant did not have a constitutional right to possess a machine gun, as he all but concedes, that you don't engage in a further analysis. I agree that in the 922K context, your hypothetical about the two serial numbers printed on the not, so I can't provide a firm position there, but it's simply not implicated here, both on the facts. But, Peter, the, I mean, he wasn't charged with the possession of, as a crime, separate crime, he wasn't charged with the possession of a firearm with an obliterated serial number. This is for sentencing purposes. Yes, and I do want to be clear that there's no reason to think on the text, rather than on the Second Amendment, that 922K and the enhancement are necessarily coterminous and need to be interpreted together, because, as my friend noted, 922K has a knowing mens rea where the guidelines does. So it's a different question whether 922K applies when only one serial number is obliterated. This wasn't in the briefing, because it obviously didn't come up, but the few cases I found on that suggest that 922K would apply, the statute would apply when one serial number was obliterated, but this Court does not need to decide that here today, because the guidelines enhancement and the statute are not necessarily coterminous. If the Court has no further questions, we ask that the Court affirm. Thank you, Counsel. Thank you. Ms. Sawyer, you have some time. May it please the Court, I don't have additional argument, but if the Court has additional questions based on the argument presented, I would be happy to answer them or address them. Thank you. Thank you. I note that you're also in court upon sign, but of course you're with the Public Defender's Office, but thank you for taking the assignment. We appreciate it on behalf of the Fourth Circuit. Yes, sir. And we acknowledge, of course, Ms. Sawyer's representation in the United States. We'll ask the Clerk to adjourn the Court. Signee Dye, you will come down and recount. This Honorable Court stands adjourned. Signee Dye, doctor of the United States and this Honorable Court.
judges: Roger L. Gregory, G. Steven Agee, DeAndrea Gist Benjamin